```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MALCOLM ANDERSON,                   :  16 Civ. 2583 (ALC) (JCF)
                                    :
               Plaintiff,           :       MEMORANDUM
                                    :       AND  ORDER
     - against -                    :
                                    :
THE CITY OF NEW YORK; CORRECTION    :
CAPTAIN ARLENE AGARD (Shield No.    :
417), CORRECTION OFFICER SHAWN      :
GRANT (Shield No. 1213), and        :
CORRECTION OFFICER BENJAMIN NDUKA   :
Shield No. 6155),                   :
                                    :
               Defendants.          :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/17

    Malcolm Anderson brings this action pursuant to 42 U.S.C. § 1983 against the City of New York and Correction Officers ("COs") Arlene Agard, Shawn Grant, and Benjamin Nduka. He alleges that while he was incarcerated at the Manhattan Detention Center (the "MDC"), the defendants violated his constitutional rights by assaulting him in his cell and falsely arresting and maliciously prosecuting him after the altercation. The defendants move to disqualify plaintiff's counsel, the Law Offices of Michael S. Lamonsoff, PLLC (the "Lamonsoff Firm"), on the ground that the firm's prior representation of CO Grant in a personal injury action creates a conflict of interest. For the reasons set forth below, the motion is granted.

1

Background

Mr. Anderson alleges that on April 17, 2014, the defendants assaulted him in his cell at the MDC, striking and kicking him on his back, arms, legs, and body. (Complaint, ¶¶ 15, 20-21). He alleges that the defendants then made falsely represented to the New York County District Attorney's Office that he instigated the altercation by attacking the officers, which caused him to be charged with assault, among other crimes. (Complaint, ¶¶ 22-28). The charges, which were ultimately dismissed, caused him to be incarcerated for an additional seven months. (Complaint, ¶ 29). CO Grant denies making false statements to the District Attorney's Office and contends that Mr. Anderson did in fact assault the officers, justifying their use of force. (Deposition of Shawn Grant dated July 20, 2017 ("Grant Dep."), attached as Exh. D to Declaration of Christopher G. Arko dated Aug. 28, 2017 ("Arko Decl."), at 92-97). CO Grant also asserts that his left knee was injured during the incident and that he is currently in the process of retiring because of the injury. (Grant Dep. at 16-19).

CO Grant's deposition was initially scheduled for June 14, 2017. (Arko Decl., ¶ 4). On that day, before the deposition, CO Grant informed defense counsel, Christopher Arko, that the Lamonsoff Firm had previously represented him in a personal injury action arising out of a car accident in 2010. (Arko Decl., ¶ 5).

When CO Grant and Mr. Arko arrived at the Lamonsoff Firm's office for the deposition, Mr. Arko relayed this information to Jessica Massimi, plaintiff's counsel at the firm, and she confirmed that the firm had previously represented CO Grant in at least one personal injury lawsuit. (Arko Decl., ¶ 6; Transcript dated June 14, 2017 ("6/14/17 Tr."), attached as Exh. B to Arko Decl., at 3-6). Mr. Arko then postponed the deposition to discuss the implications of the Lamonsoff Firm's prior representation of CO Grant with his superiors. (Arko Decl., ¶ 7; 6/14/17 Tr. at 4-5). Two weeks later, on June 30, 2017, he sent Ms. Massimi an email stating, "After looking this matter further, we will not be moving to disqualify at this time." (Email of Christopher G. Arko dated June 30, 2017 ("Arko 6/30/17 Email"), attached as part of Exh. C to Arko Decl.). The parties rescheduled CO Grant's deposition for July 20, 2017. (Arko Decl., ¶ 12).

At CO Grant's deposition, Ms. Massimi asked him numerous questions -- covering more than twenty-five pages of the deposition transcript -- about the 2010 car accident. (Grant Dep. at 37-58, 65, 78-84). Ms. Massimi also stated that she planned to ask for production of medical records related to the accident. (Grant Dep. at 78). During a break in Ms. Massimi's questioning, and outside of CO Grant's presence, Mr. Arko expressed renewed concerns that the Lamonsoff Firm's prior representation of CO Grant might

3

create a conflict of interest. (Grant Dep. at 61-64). Ms. Massimi dismissed Mr. Arko's worries, explaining that she was not personally involved in representing CO Grant in the prior action and that she had not accessed the firm's records from that case. (Grant Dep. at 65, 73). Ms. Massimi then resumed her questioning of CO Grant, and the parties completed the deposition.

On August 17, 2017, the defendants requested a pre-motion conference seeking leave to disqualify plaintiff's counsel. (Letter of Christopher G. Arko dated Aug. 17, 2017). I denied the application without prejudice to the filing of a formal motion to disqualify (Order dated Aug. 21, 2017), which the defendants filed on August 28, 2017.

Discussion

    A.    Standard

When considering a motion to disqualify opposing counsel, a court must "balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) (quoting Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005)). "[M]otions to disqualify counsel are disfavored and subject to a high standard of proof, in part because they can be used tactically as leverage in litigation." Revise

4

Clothing, 687 F. Supp. 2d at 388; see Scantek Medical, Inc. v. Sabella, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008) ("In view of their potential for abuse as a tactical device, motions to disqualify opposing counsel are subject to particularly strict scrutiny."). Such strict scrutiny stems from concerns that motions to disqualify inevitably cause delay, increase costs, and interfere with a party's right to the counsel of its choice. Rothberg v. Phil's Main Roofing, LLC, No. 14 Civ. 10195, 2016 WL 2344882, at *1 (S.D.N.Y. May 2, 2016); Revise Clothing, 687 F. Supp. 2d at 388; Scantek Medical, 693 F. Supp. 2d at 238. Although the party seeking disqualification bears a heavy burden, "any doubts are to be resolved in favor of disqualification." Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231-32 (S.D.N.Y. 2010); accord Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).

"[T]he authority to disqualify an attorney is a function of the court's inherent supervisory power . . . ." Revise Clothing, 687 F. Supp. 2d at 388. When deciding motions to disqualify, courts look to state disciplinary rules, including, in this forum, the New York Rules of Professional Conduct, Amusement Industry, Inc. v. Stern, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009), but such rules merely provide guidance and need not be rigidly applied, Hempstead Video, 409 F.3d at 132; Mori v. Saito, 785 F. Supp. 2d 427, 432 (S.D.N.Y. 2011). Furthermore, the "[m]ere appearance of

impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." Reyes v. Golden Krust Caribbean Bakery, Inc., No. 15 Civ. 7127, 2016 WL 4708953, at *8 (S.D.N.Y. Sept. 1, 2016) (alteration in original) (quoting Revise Clothing, 687 F. Supp. 2d at 388).

Where, as here, an attorney is engaged in the successive representation of adverse parties, she may be disqualified when:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of [her] prior representation of the client.

Revise Clothing, 687 F. Supp. 2d at 389 (quoting Hempstead Video, 409 F.3d at 133). This standard hues closely to Rule 1.9(a) of the New York Rules of Professional Conduct, which provides that, absent informed consent, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the

6

former client." An attorney's conflicts of interest "are ordinarily imputed to [her] firm based on the presumption that 'associated' attorneys share client confidences." Hempstead Video, 409 F.3d at 133; see also New York Rules of Professional Conduct § 1.10(a); American International Group, Inc. v. Bank of America Corp., 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011).

B. Application

There is no dispute that the Lamonsoff Firm represented CO Grant in a personal injury lawsuit arising out of his car accident in 2010. (Memorandum of Law in Support of Defendants' Motion for Disqualification of Plaintiff's Counsel at 6; Plaintiff's Memorandum of Law in Support of His Opposition to the Defendants' Motion to Disqualify Counsel ("Pl. Memo.") at 7). Although the plaintiff urges the Court to consider the fact that Ms. Massimi was not associated with the Lamonsoff Firm during its prior representation of CO Grant (Pl. Memo. at 7), this is irrelevant, as the conflict is imputed to the entire firm. The first prong of the successive representation standard is therefore satisfied.

With respect to the second prong, a substantial relationship between the subject matter of counsel's prior representation and the present lawsuit exists "if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same." CQS ABS Master Fund Ltd. v.

MBIA Inc., No. 12 Civ. 6840, 2013 WL 3270322, at *12 (S.D.N.Y. June 24, 2013) (quoting United States Football League v. National Football League, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985)). The standard is a stringent one. A substantial relationship is established "only upon a showing that the relationship between issues in the prior and present cases is 'patently clear.' Put more specifically, disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.'" Revise Clothing, 687 F. Supp. 2d at 392 (quoting Government of India v. Cook Industries, Inc., 569 F.2d 737, 739-40 (2d Cir. 1978)); accord Obeid ex rel. Gemini Real Estate Advisors v. La Mack, No. 14 Civ. 6498, 2015 WL 7180735, at *4 (S.D.N.Y. Nov. 9, 2015). This inquiry "does not turn on whether the legal claims or underlying theories are similar, but rather whether the successive representations share common material factual issues." Olajide v. Palisades Collection, LLC, No. 15 Civ. 7673, 2016 WL 1448859, at *3 (S.D.N.Y. April 12, 2016) (emphasis omitted) (quoting Giambrone v. Meritplan Insurance Co., 117 F. Supp. 3d 259, 272 (E.D.N.Y. 2015)); see also Revise Clothing, 687 F. Supp. 2d at 392 ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes." (emphasis omitted) (quoting United States Football

8

League, 605 F. Supp. at 1460 n.26)).

Here, the plaintiff argues that there is no substantial relationship between the prior action and this lawsuit because "the central issue in [the prior action] was [] whether any driver of any vehicle adverse to [CO] Grant's was negligent," which is unrelated to "whether the [d]efendants [in this action] intentionally violated [] Malcolm Anderson's civil rights." (Pl. Memo. at 8-9). The central legal issues in the two lawsuits, driver negligence and civil rights violations, are indeed unrelated. However, as discussed above, the substantial relationship inquiry turns on the nexus between the factual issues, not the legal issues, in the successive representations. On that score, Ms. Massimi explained repeatedly during CO Grant's deposition that she sought information about the 2010 car accident to support her theory that the injuries CO Grant claims to have sustained in the altercation with Mr. Anderson actually resulted from the car accident. (Grant Dep. at 65, 69-70, 74). That is, the plaintiff seeks to develop evidence about the car accident to refute CO Grant's contention that Mr. Anderson assaulted the officers and support Mr. Anderson's claim that the officers assaulted him without justification. Thus, the plaintiff has put the cause, nature, and severity of CO Grant's injuries from the car accident at issue in this litigation. Those same factual

9

issues were presumably at the heart of determinations about the defendants' liability and CO Grant's damages in the prior action. Accordingly, there is a substantial relationship between the factual issues in this lawsuit and the personal injury action.

With respect to the third prong, once it is established that there is a substantial relationship between the prior and current lawsuits, there is a rebuttable presumption that counsel had access to confidential information during the first litigation that would be relevant in the second. Olajide, 2016 WL 1448859, at *3; Revise Clothing, 687 F. Supp. 2d at 392-93; Leslie Dick Worldwide, Ltd. v. Soros, No. 08 Civ. 7900, 2009 WL 2190207, at *12 (S.D.N.Y. July 22, 2009). The presumption exists because requiring proof of access to privileged information would "put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether." Revise Clothing, 687 F. Supp. 2d at 395 (quoting Government of India, 569 F.2d at 740). The presumption may be rebutted by a showing that the firm's involvement in the first litigation was so minimal that it was not likely to have access to the client's confidential information or by the imposition of a screen at the outset of the second litigation that prevents the sharing of confidential information. Hempstead Video, 409 F.3d at 138; Leslie Dick

Worldwide, 2009 WL 2190207, at *13-14.

Here, the plaintiff has done nothing to rebut the presumption of counsel's access to confidential information from the personal injury action. He makes no showing that the Lamonsoff Firm's representation of CO Grant in the personal injury action was somehow limited in scope, and there is no indication that the Lamonsoff Firm established a screen to wall off Ms. Massimi from confidential information obtained by the firm during that litigation. While Ms. Massimi contends that she is "not aware of any confidential information whatsoever regarding [CO] Grant's prior lawsuit" (Pl. Memo. at 10), "a lawyer cannot avoid disqualification by simply professing not to remember receiving any privileged material," Leslie Dick Worldwide, 2009 WL 2190207, at *13. Therefore, the third prong of the successive representation test is satisfied, and the defendant has established a conflict of interest that warrants disqualification of the Lamonsoff Firm from this case.

C. Waiver

Finally, the plaintiff argues that the defendants waived the conflict of interest by failing to file their motion to disqualify promptly after receiving notice of the potential conflict and through Mr. Arko's June 30 email stating that he would not seek disqualification "at this time." (Pl. Memo. at 10-13). It is

11

well settled in this Circuit that "[a] motion to disqualify . . . should be made within a reasonable time of discovering a possible conflict of interest, or a waiver will be presumed." Siverio v. Lavergne, No. 86 Civ. 6584, 1989 WL 31531, at *2 (S.D.N.Y. March 29, 1989); see also Catamount Radiology, P.C. v. Bailey, No. 14 CV 213, 2015 WL 4162730, at *3 n.6 (D. Vt. July 8, 2015) ("Courts have found a party waived its right to seek disqualification of opposing counsel when . . . there was evidence the movant postponed filing the motion for several months until the eve of trial."); TufAmerica, Inc. v. Codigo Music LLC, No. 11 Civ. 1434, 2013 WL 1903867, at *6 (S.D.N.Y. May 7, 2013) ("[A]ttorneys are expected to bring what they genuinely believe are serious issues of disqualification arising during litigation to the tribunal's attention promptly for adjudication." (quoting George v. City of Buffalo, 789 F. Supp. 2d 417, 431 (W.D.N.Y. 2011))). Courts have also held that a party waives its right to seek disqualification when it expressly agrees not to file a motion to disqualify. See Central Milk Producers Cooperative v. Sentry Food Stores, Inc., 573 F.2d 988, 991-92 (8th Cir. 1978); Catamount Radiology, 2015 WL 4162730, at *3 n.6.

Mr. Arko first learned of the Lamonsoff Firm's prior representation of CO Grant on June 14, 2017, when CO Grant told him about it. (Arko Decl., ¶¶ 4-5). At that time, however, there

12

is no indication that Mr. Arko had reason to believe that the issues involved in the personal injury action were connected to the issues in this litigation. Rather, the record indicates that Mr. Arko first became aware of the connection between the two lawsuits on July 20, 2017, when Ms. Massimi asked CO Grant numerous questions about the accident at his deposition and revealed her theory that the injuries CO Grant alleges to have suffered in the altercation with Mr. Anderson were in fact caused by the car accident. (Arko Decl., ¶ 13). Thus, the timeliness of this motion should be measured from July 20, 2017. Using an earlier benchmark would encourage lawyers to file speculative motions to disqualify when they lack any indication that a genuine conflict exists, causing the very delay and added expense that the stringent standard for disqualification is designed to avoid.

Mr. Arko sought a pre-motion conference concerning disqualification of plaintiff's counsel on August 17, 2017, within a month of learning of the conflict. Courts in this District have held that a delay as short as two months can waive a party's right to bring a motion to disqualify where the party has not previously expressed concerns about the conflict and the motion is "suspiciously timed." See, e.g., Secured Worldwide, LLC v. Kinner, No. 15 Civ. 1761, 2015 WL 4111325, at *6 (S.D.N.Y. June 24, 2015). Here, however, Mr. Arko expressed concerns about the

13

Lamonsoff Firm's involvement in the prior action during a break in Ms. Massimi's questioning of CO Grant about the car accident, and nothing about the timing of this motion is suspicious. Mr. Arko's motion to disqualify was therefore brought within a reasonable time after learning of the conflict.

Furthermore, Mr. Arko's June 30 email did not waive the defendants' right to bring this motion. The email states, "After looking into this matter further, we will not be moving to disqualify <u>at this time</u>." (Arko 6/30/17 Email (emphasis added)). Thus, it does not disclaim the right to bring a motion to disqualify for the remainder of the litigation. Rather, it appears to contemplate the possibility that facts might arise in the future that warrant disqualification, which is exactly what happened. Therefore, the defendants did not waive the right to seek disqualification of the Lamonsoff Firm from this case.

<u>Conclusion</u>

For the reasons set forth above, the defendants' motion to disqualify the Lamonsoff Firm is granted. This action is stayed for thirty days to give Mr. Anderson time to retain new counsel.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 29, 2017

Copies transmitted this date:

Jessica Massimi, Esq.
Law Offices of Michael S. Lamonsoff, PLLC
32 Old Slip
New York, NY 10055

Christopher G. Arko, Esq.
New York City Law Department
100 Church St.
New York, NY 10007