**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

MALCOLM ANDERSON,

                       **Plaintiff,**

     -against-

THE CITY OF NEW YORK, et al.,

                     **Defendants.**

---------------------------------------------------------- x

USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#:
DATE FILED: 3-28-19

**1:16-cv-02583 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

Plaintiff Malcolm Anderson brings this 42 U.S.C. § 1983 action against the City of New York, Captain Arlene Agard ("Agard"), Correction Captain Benjamin Nduka ("Nduka"), and Correction Officer Shawn Grant ("Grant") (collectively "Defendants") for violating his constitutional rights. ECF No. 1. Agard and Nduka now move for Summary Judgment on Plaintiff's malicious prosecution, denial of a fair trial, excessive force, and failure to intervene claims. For the reasons set forth below, Defendants' motion is **DENIED**.

## BACKGROUND

### I.  Factual Background

Anderson was an inmate at the New York City Department of Corrections housed at the Otis Bantum Correctional Center ("OBCC") on Rikers Island. Def. Rule 56.1 Statement at ¶¶ 6-

7. On April 17, 2014, Anderson was transported to the Manhattan Department of Corrections ("MDC") for a court appearance in front of Judge Jill Konviser. *Id.* at ¶ 8. After arrival, officials placed Anderson in a waiting area on the 12th floor with six or seven other inmates. *Id.* at ¶ 11. Anderson pled guilty in his case before Judge Konviser and was escorted back to the holding area on the 12th floor. *Id.* at ¶ 13-15. At approximately 3:24 p.m., officials transported Anderson to the medical clinic for pain medication and later returned him to the holding area. *Id.* at ¶ 16. Once in the holding area, Anderson notified officials that he needed to defecate. *Id.* at ¶ 17. The officials obliged and placed him in a cell in the back of the holding area to allow him to take care of his business in solitude. *Id.* at ¶¶ 17-18. The parties have very different versions of the ensuing events.

### A. Defendants' Version of the April 17, 2014 Incident ("the incident")

At approximately 4:15 p.m., Grant heard a toilet continuously flushing from Anderson's cell. Grant surveyed the area and observed Anderson continuously pushing his foot on the toilet's flush button, causing it to overflow. *Id.* at ¶ 19. Grant then ordered Anderson to stop flushing the toilet, but Anderson continued. *Id.* at ¶ 21.

Nduka and Agard were notified and arrived at the cell. Upon arrival, Agard noticed the wet floor and Anderson's bloody nose. *Id.* at ¶ 22-24. Defendants allege Anderson had a reputation for picking his nose until it bled. *Id.* at ¶ 25. Due to the blood on Anderson's face, Agard ordered Grant to open the cell gate so Anderson could be taken to the clinic. *Id.* at ¶ 26. After Grant opened the gate, Anderson stepped out, turned into the corridor and yelled "that's

2

right bitch, I got AIDS" and spat blood at Agard. *Id*. at ¶ 28. Anderson's blood hit Agard's shirt, leaving a mark. *Id*. at ¶ 29. Anderson then lunged at Agard. *Id*. at 30. In defense, Agard attempted to punch Anderson's upper torso, causing her to fall to the flooded floor. *Id*. at ¶ 31.

Grant and Nduka then attempted to subdue Anderson with upper body holds. *Id*. at ¶ 33. Anderson refused to comply with the officers' orders, and violently flailed and kicked. *Id*. at ¶ 34. While struggling to restrain Anderson in the flooding cell, Nduka, Grant and Anderson all fell to the ground. *Id*. at ¶ 35.

Once Agard could stand she ordered Anderson to cease resisting, but he ignored and continued to tussle with Nduka and Grant. *Id*. at ¶¶ 36-37. Agard then informed Anderson that she would spray him with a chemical agent if he continued to resist. *Id*. at ¶ 38. As Anderson continued, Agard pepper sprayed his face. *Id*. at ¶ 39. Anderson then stopped resisting and complied with Agard's orders to place his hands behind his back to be handcuffed. *Id*. at ¶¶ 40-41. Agard then called for a response team to remove Anderson from the area and Anderson remained on the floor until the team arrived. *Id*. at ¶¶ 41-42.

**B. Plaintiff's Version of the Incident[1]**

After defecating in the toilet, Anderson pushed the flush button an inch above the toilet once. Pl. 56.1 at ¶¶ 18-19. The toilet began to overflow, so he called out to Grant and Nduka for help. *Id*. at ¶ 19. Grant refused to release Anderson from the cell but called Agard who arrived

---

1  Plaintiff's version of events derives from his Local Rule 56.1 Counter Statement of Facts. ("Pl. 56.1") ECF No. 102.

with several other officers in leather gloves. *Id*. at ¶ 22. Agard stated to Anderson "you are going to get yours" and walked off with the officers. *Id*; Ex. C, Anderson Dep. at 119:4-6. Anderson believes Agard then cut the water off since the toilet stopped overflowing. *Id*. at ¶ 22.

Grant and Nduka ordered Anderson to exit the cell and place his hands on the wall. *Id*. at ¶ 24. After he complied, Grant shoved Anderson's face into the wall causing his nose to bleed onto his shirt and pants. *Id*. Grant and Nduka then handcuffed him and threw him to the ground. *Id*. Next, Agard returned and all three officers began to kick and punch Anderson's lower body as Agard instructed the officers not to hit his face. *Id*. Anderson tried to lift his head, but never flailed his arms or resisted. *Id*. at ¶ 37. Agard then stated, "I told you you were going to get yours." *Id*. at ¶ 24; Ex. C, Anderson Dep. at 150:2-10. Agard then "squatted down," punched Anderson in the face and pepper sprayed his face. *Id*. An extraction team arrived and took Anderson to the decontamination shower, where he stripped off his clothes and rinsed the pepper spray from his face and body. Pl. 56.1 at ¶ 43. Anderson's shirt covered was covered in blood, so he discarded it. *Id*.

### C. Events Following the Incident

Anderson was taken to the medical clinic after the incident. Def. 56.1 at ¶ 44. While in route, Anderson claims, and Defendants' deny, an escorting corrections officer assured him that "he could get re-arrested and it would be better if [he] just said nothing happened." Pl. 56.1 at ¶ 45; Ex. C, Anderson Dep. at 161:5-8. It is undisputed that Anderson denied injury and refused medical treatment at the clinic. Pl. 56.1 ¶ 45; Def. 56.1 at ¶ 45. Officials then returned Anderson

to the OBCC where he again refused a medical exam and stated he was uninjured. Def. 56.1 at ¶¶ 48- 49. Plaintiff claims Captain Mulligan advised him that if he "wrote nothing happened to [him] . . . he would make everything go away." Pl. 56.1 at ¶ 47; Ex. C, Anderson Dep. At 164:15-21.

On April 18, 2014, Anderson stated to mental health staff at OBCC that he did not have any issues with the Department of Corrections. Def. 56.1 at ¶ 59. Anderson did not file any grievances. *Id.* at ¶ 60.[2]

### D. Anderson's Criminal Proceedings

On May 6, 2014, Investigator Scott Thompson filed a felony complaint after discussing the details of the incident details with Defendants and other officials.[3] The same day, after appearing at MDC for sentencing before Judge Konviser, Thompson arrested Anderson for the incident. Def. 56.1 at ¶¶78-79. On May 20, 2014, a grand jury indicted Anderson on two counts of Assault in the Second Degree; one count of Aggravated Harassment of a person whom the inmate knew or reasonably should have known was an employee by an inmate; and one count of Obstructing Governmental Administration in the Second Degree.[4] *Id.* at ¶81. Defendants also discussed the

---

2 All three officers submitted injury reports pursuant to the New York State Workers' Compensation Law in relation to the April 17, 2014 incident with Anderson. Def. 56.1 at ¶ 57. All three officers also filled out use of force reports relating to the incident. *Id.* at ¶ 58.

3 The complaint asserted: three counts of assault in the second degree in violation of N.Y. Penal Law § 120.05(7); four counts of aggravated harassment of an employee by an inmate in violation of N.Y. Penal Law § 240.32; one count of obstructing governmental administration in the second degree in violation of N.Y. Penal Law § 195.05; and one count of resisting arrest in violation of NY Penal Law § 205.30. Def. 56.1 at ¶ 77.

4 Specifically, Anderson was charged with violating the following: N.Y. Penal Law § 120.05(3) for causing

details of the incident with the District Attorney and testified to these details to the grand jury. Pl. 56.1 at ¶¶ 108-109.

On September 23, 2014, Judge Konviser reduced Count One to Attempted Assault in the Second Degree. *Id*. at ¶ 82. On November 20, 2014, Count One as to Officer Grant was dismissed, but survived as to Officer Nduka. *Id*. at ¶ 83-84.

On November 25, 2014, Anderson went to trial for the remaining charges.[5] Def. 56.1 at ¶ 84. At trial, the prosecution attempted to produce Agard's alleged stained shirt into evidence. It is undisputed that the shirt was not found until November 26, 2014, the second day of trial. *Id*; Pl. 56.1 at ¶ 102. Plaintiff claims that photographs of Agard's shirt were not taken immediately after the incident, in violation of DOC policy. *Id*. at ¶ 29.[6] Agard testified that the blood "mark" was the size of a silver dollar, on the left side of her shirt, but Plaintiff claims the shirt Agard gave the prosecution at trial had a stain larger than a silver dollar, the stain was on the right side, and the shirt did not have Agard's name on it. *Id*. Nevertheless, the shirt was precluded from the trial because it was never vouchered as evidence and the defense never had a prior opportunity to examine it. Def. 56.1 at ¶ 85. On December 2, 2014, the jury found Anderson not guilty.

---

physical injury to a peace officer with intent to prevent that peace officer from performing a lawful duty; N.Y. Penal Law § 240.32 for causing and attempting to cause a facility employee to come into contact with blood by throwing, tossing and expelling such fluid with intent to harass, annoy, threaten, and alarm that employee; N.Y. Penal Law § 195.05 for intentionally obstructing, impairing and perverting the administration of law and other governmental function and preventing and attempting to prevent a public servant from performing an official function, by means of intimidation, physical force and interference, and by means of any independently unlawful act. Def. 56.1 at ¶ 81.
5 These charges included: one count of Assault in the Second degree; one count of Aggravated Harassment of an Employee by an Inmate; and one count of Obstructing Governmental Administration.
6 Plaintiff also claims Defendants violated DOC preservation policy by presenting the shirt stuffed inside a plastic bag with "I Love NY" written on the side. *Id*. Pl. 56.1 at ¶ 29

## II. Procedural History

On April 6, 2016, Anderson filed a complaint against the City of New York, Agard, Grant and Nduka. ECF No. 1. On September 15, 2016, Defendants filed an answer. ECF No. 21. On June 22, 2018, the Court So-Ordered a stipulation dismissing with prejudice: (1) Plaintiff's sole claim against the City of New York; (2) Plaintiff's abuse of process claim; and, (3) the claim for unlawful search and seizure. ECF No. 85. On August 3, 2018, Agard and Nduka moved for Summary Judgment on Plaintiff's claims for: (1) malicious prosecution; (2) fair trial; (3) excessive force; and (4) failure to intervene. ECF No. 95. Defendants also filed an accompanying Statement of Material Facts pursuant to Local Rule 56.1. ECF No. 96. On August 31, 2018, Plaintiff filed his opposition, along with a Counter Statement of Material Facts pursuant to Local Rule 56.1 denying many facts submitted by Defendants. ECF Nos. 100, 102. Defendants filed a reply as well as a counter statement denying many of Plaintiff's allegations. ECF Nos. 108-109.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact in dispute. Fed. R. Civ. P. 56. A fact is "material" if it may affect the outcome of the litigation under the governing law. *Id.* The moving party is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to

avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504

(S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536

F.3d 140, 145 (2d Cir. 2008)).

Courts can grant summary judgment as a matter of law in the absence of a triable issue of

fact. *Id.* In reviewing a motion for summary judgment, courts must construe the evidence in the

light most favorable to the non-movant and draw all reasonable inferences in their favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

*Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994).

## DISCUSSION

### I.   § 1983 Malicious Prosecution

To prevail on a § 1983 malicious prosecution claim, a plaintiff must show: "(i) the

commencement or continuation of a criminal proceeding against her; (ii) the termination of the

proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that

the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d

Cir. 2016) (internal quotation marks omitted).  Additionally, a plaintiff must demonstrate "a

post-arraignment seizure." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013).

Here, it is uncontested that: (1) Defendants initiated a criminal proceeding against

Plaintiff by contributing to the investigation, prosecution and grand jury indictment; (2) Plaintiff

suffered deprivation of his liberty while imprisoned until trial; and (3) the proceeding was

terminated in Plaintiff's favor after the jury found him not guilty. Therefore, the Court's decision

8

turns on whether Defendants commenced a criminal proceeding against Plaintiff without probable cause and with malice.

## A. Probable Cause

"Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

The Second Circuit has maintained that a plaintiff's § 1983 malicious prosecution claim must show a state actor violated their Fourth Amendment rights and establish the elements of state malicious prosecution claims. *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010). *See also Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003). Under New York law, "[A] grand jury indictment gives rise to a presumption that probable cause exists and a claim for malicious prosecution in relation to the crimes described in the indictment thereby is defeated." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution . . . [, and] indictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citations and internal quotation marks omitted).

Recently, however, the Second Circuit diverted from past decisions and ruled that "federal law defines the elements of a § 1983 malicious prosecution claim," and "a State's tort

law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). The district court in *Lanning* dismissed plaintiff's malicious prosecution claim for failing to rebut the presumption of probable cause under New York State law, but the Second Circuit dismissed plaintiff's claim solely based on common law principles and federal law. *Id.* at 28. The Second Circuit has not addressed if courts in this circuit are to continue to follow state laws indicating that a grand jury indictment creates a rebuttable presumption of probable cause. However, considering the Second Circuit has consistently applied this rule and since the rule is commonly applied throughout other federal circuits, the Court will apply the rule in this case.[7]

Here, a grand jury indicted Plaintiff on four criminal charges related to the incident. This creates a presumption of probable cause Plaintiff can rebut by providing facts demonstrating the indictment was "procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72 (internal quotation marks omitted); *see also Manganiello*, 612 F.3d at 162. Plaintiff "bears the burden of proof in rebutting the presumption, and he must do so with more than mere conjecture and surmise that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Battisti v. Rice*, 2017 U.S. Dist. LEXIS 2887, 2017 WL 78891, at *9 (E.D.N.Y. Jan.9, 2017) (internal quotation marks omitted).

---

7 *See. e.g. Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989) ("A grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute," and may be rebutted with evidence that the presentment was "procured by fraud, perjury or other corrupt means."); *Sanders v. Jones*, 845 F.3d 721, 96 Fed. R. Serv. 3d 990 (6th Cir. 2017); *Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014); *Conrad v. United States*, 447 F.3d 760, 768 (9th Cir. 2006).

Plaintiff contends he would not have been indicted had Defendants not provided the grand jury with false and misleading testimony. Pl. 56.1 at ¶ 6. Furthermore, Anderson argues Defendants' failure to properly introduce Agard's allegedly bloody shirt into evidence at trial is additional evidence to show Defendants' bad faith. Pl.'s Opp'n 5-7. Plaintiff also contends that his testimony must be presumed true as the non-moving party and thus the only inference for the Court to draw is that Defendants lied to the prosecutor and tainted the grand jury decision. *Id.* at 18 fn. 8.

Plaintiff relies on *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016) to argue that his testimony can independently establish his malicious prosecution claim and defeat summary judgment. In *Rentas,* an inmate plaintiff brought a malicious prosecution claim against officer defendants for allegedly providing false testimony to a grand jury about a prison incident, leading to plaintiff's subsequent indictment, extended imprisonment, and jury trial where he was acquitted of all charges. *Id.* at 219. The defendants moved for summary judgment. *Id.* The district court granted defendants' motion and ruled that plaintiff could not independently rely on his testimony to rebut the presumption of probable cause created by the grand jury indictment. *Id.* at 220. However, the Second Circuit reversed the decision and ruled that a plaintiff's testimony may constitute independent evidence to prove defendants provided the grand jury with false evidence. *Id.* at 221. *See also Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("Contrary to the district court's analysis, a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact."); *Boyd v. City of New York*,

336 F.3d 72, 77 (2d Cir.2003) (reversing summary judgment where the plaintiff offered a competing account of the facts supported by only a single document).

Similarly, the Court concludes that Anderson has raised an issue of material fact as to whether Defendants provided the grand jury with false testimony and thus rebutted the presumption of probable cause. Like the plaintiffs in *Rentas* and *Bellamy*, Anderson offered admissible testimonial evidence beyond mere conjecture to show the grand jury indictment might have been the result of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino*, 331 F.3d at 72. Indeed, some of Anderson's arguments, such as the allegation that Defendants' failure to properly preserve Agard's shirt proves that Defendants fabricated evidence, amount to "mere conjecture and surmise" insufficient to rebut the presumption of probable cause. *Id.* However, Anderson's straightforward testimony is beyond mere conjecture: he denies disobeying orders and behaving in a way that gave Defendants probable cause to arrest him. Specifically, Anderson denied intentionally flooding his cell, stated he never told an officer he had AIDS before spitting on him or her, and denies throwing any punches. At trial, a jury will be free to weigh the parties' contradicting testimony to assess credibility and determine if probable cause existed. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) ("[D]istrict courts should not engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.") (quotation marks omitted).

**B. Malice**

12

The Court can infer malice when a plaintiff is prosecuted without probable cause. *Manganiello*, 612 F.3d at 163 (2d Cir.2010); *see also Boyd*, 336 F.3d at 78. ("A lack of probable cause generally creates an inference of malice.") Crediting Anderson's testimony as true, Defendants unjustifiably beat him and lied about it to an investigator, a district attorney, and a grand jury, resulting in his seven-month imprisonment. A reasonable jury may conclude Defendants acted with actual malice based on these facts. Accordingly, Defendants' motion for summary judgment on the malicious prosecution claim is **denied**.

## II. Fair Trial Claims

Plaintiff's fair trial claim also survives. "A person suffers a constitutional violation" of his right to a fair trial "if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003)). Probable cause is not a defense to a fair trial claim. *Shepherd v. Mayer*, No. 13 CV 6142 (NG) (PK), 2018 WL 679456, at *4 (E.D.N.Y. Jan. 31, 2018); *see also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016) ("Because probable cause is no defense to a denial of the right to a fair trial claim, fair trial claims cover kinds of police misconduct not addressed by false arrest or malicious prosecution claims.")

Defendants' argument that Plaintiff failed to identify fabricated evidence lacks merit. Plaintiff claims Defendants fabricated their testimonial evidence by claiming that he purposely

flooded Cell B, caused himself to bleed from the face, spit blood on Agard after shouting "I got AIDS bitch," and assaulted the officers. Pl's. Opp'n. p.19-22. Plaintiff also denies Grant and Nduka's testimony that they both fell to the ground to restrain him and, because he continued to resist, Agard was forced to pepper spray his face before handcuffing him. Pl. 56.1 ¶¶ 33-39. Furthermore, Grant testified at the criminal trial that Plaintiff had his foot on "the lever continuously pressing [and] jamming the toilet bowl so it would overflow," (Ex. B. Trial Tr. at 44:16-20, Nov 11, 2014), but at his deposition testified that the toilet had a small flush button directly above it. Grant Deposition at 93:8-15, July 20, 2017; Pl. 56.1 at ¶ 99.[8] Therefore, there are material factual disputes about the evidence related to the incident and Plaintiff has satisfied the fair trial claim's first, second, third, and fourth elements. *Garnett*, 838 F.3d at 268, 274–280.

The remaining issue is whether the allegedly fabricated evidence caused Plaintiff's deprivation of life, liberty, or property. *Id.* at 279. The Second Circuit noted that the seizure element can be satisfied by "any post-arraignment deprivations of liberty (such as being bound-over for trial)." *Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 117 (2d Cir.1995). Here, Plaintiff brings sufficient evidence to show a jury that the fabricated evidence was the proximate cause of his lost liberties. *Garnett*, 838 F.3d at 277. The jury could well find that Defendants' allegedly false statements influenced the prosecutor's decision to seek an indictment. In deciding to go forward, evidence painting Anderson as a violent and noncompliant inmate would likely be

---

8 Grant also testified at the criminal trial that the toilet bowl was overflowing because of something "stuffed" in it. Ex. B, trial Tr. at 48:1-3; Pl. 56.1 at ¶ 100.

influential. Following the grand jury indictment, Anderson was held in custody for seven months. Pl. 56.1 ¶ 102. Participating in these criminal proceedings and being held in custody constitutes a deprivation of Anderson's liberty and, accordingly, Defendants' motion for summary judgment on the fair trial claim is **denied.**

## III. Excessive Force

### A. The Eighth Amendment

Anderson also claims the officers used excessive force during the incident. Because Anderson was an inmate during his arrest, this excessive force claim arises under the Eighth Amendment. See *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("[T]he Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases ... where the deliberate use of force is challenged as excessive and unjustified."). To state an Eighth Amendment claim, an inmate must satisfy both an objective and subjective element. *Id.*

The objective element requires the plaintiff to "allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1,8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). This objective inquiry is "context specific, turning upon contemporary standards of decency." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)).

15

The subjective element requires a plaintiff to show that a defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). The critical inquiry is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 36, 130 S.Ct. 1175, 1178, 175 L.Ed. 2d 995 (2010) (citation and internal quotation marks omitted); *accord Wright*, 554 F.3d at 268; *Pearson v. Cantor*, No. 08-CV-789 NGG, 2010 WL 3420532, at *3 (E.D.N.Y. Aug. 26, 2010). To evaluate the subjective prong, courts consider: "(1) the need for the application of force, (2) the threat reasonably perceived by the responsible officials, (3) the relationship between the need and the amount of force used, and (4) any efforts made to temper the severity of a forceful response." *Sidney v. Wilson*, 2007 U.S. Dist. LEXIS 86125 at *13, 2007 WL 4208626, at *4 (S.D.N.Y. Nov. 21, 2007) (citations omitted). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Wilkins*, 130 S. Ct. at 1178 (citations omitted).

Here, Anderson's evidence creates genuine issues of material fact for his excessive force claim to survive summary judgment. Accepting Plaintiff's testimony as true, the officers clearly violated contemporary standards of decency. Anderson alleges that though he complied with their orders, the officers slammed him against the wall, threw him to the floor, beat his lower

body while he was handcuffed, and pepper sprayed his face. *Id*. The incident also caused

Anderson to bleed from the nose enough to ruin his shirt. Pl. Opp'n. Mem. at 4. Thus, Plaintiff's

allegations and the evidence presented satisfy the objective element of his excessive force claim.

Plaintiff's allegations as described above satisfy the subjective element as well.

Defendants maintain they only used force necessary to restore order after Anderson told them he

purposefully flooded his cell and spit lethally contaminated blood on one of them. Def's. Reply.

at 10. They also contend there is no evidence suggesting the officers acted unreasonably "in

using upper body holds and pepper spray to regain control of a combative inmate." *Id*. However,

the Court must draw all permissible inferences in the non-moving party's favor. Plaintiff's

testimony demonstrates that the officers needed to apply a very low, if any, amount of force to

address the situation since he was non-threatening. Therefore, as described above, Defendants'

applied an unnecessary amount of force. Pl. 56.1 at ¶ 24. In addition, even if Plaintiff

intentionally flooded the cell in frustration, as Defendants contend, a reasonable trier of fact

could conclude that the force used against Anderson, which included beating his lower body and

pepper spraying his face while handcuffed, was excessive.

Moreover, the subjective element analysis is consistent with Second Circuit decisions that

find granting summary judgment against plaintiffs on excessive force claims is rarely

appropriate. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)

(finding that an allegation that any resistance to arrest was "purely passive" was sufficient to

create a material issue of fact). "Assessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Courts are hesitant "to dismiss complaints alleging excessive force even at the summary judgment stage if 'conflicts exist in the record regarding the degree and justification of force.'" *Atkins v. County of Orange*, 372 F. Supp. 2d 377 (S.D.N.Y. 2005) (Conner, J.) (quoting *Evering v. Rielly*, 2001 U.S. Dist. LEXIS 15549, No. 98 Civ. 6718, 2001 WL 1150318, at *7 (S.D.N.Y. Sept. 28, 2001) (collecting cases)). Accordingly, Plaintiff meets the subjective element The Eighth Amendment excessive force claim.

The parties' conflicting testimony creates a material dispute as to whether the officers maliciously carried out their duties. Plaintiff's evidence may lead a reasonable trier of fact to find that, both subjectively and objectively, Defendants' use of force violated the Eighth Amendment's prohibition against the "unnecessary and wanton infliction of pain." Therefore, Defendants' motion for summary judgment on Plaintiff's excessive force claim is **denied**.

### B. Qualified Immunity

Defendants' summary judgment motion on plaintiff's excessive force claims based on qualified immunity is similarly **denied**. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982)). The Second Circuit has ruled that in excessive force cases, "[w]here the circumstances are in dispute, and contrasting

accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotation marks omitted).

To determine whether the officers' actions were objectively reasonable under the circumstances, the Court must consider facts currently in dispute. If a jury were to credit Anderson's version of the incident that Defendants slammed him against the wall causing his nose to bleed all over his clothes while handcuffing him, threw him to the ground, beat his lower body and sprayed his face with pepper spray, the jury could reasonably conclude that Defendants' actions were not objectively reasonable and violated Plaintiff's Eighth Amendment rights. Accordingly, the Court **denies** qualified immunity on the excessive force claim.

## IV. Failure to Intervene

Law enforcement officials have an affirmative duty to intervene to protect citizens' constitutional rights from infringement by other law enforcement officers in their presence. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer who fails to intervene in constitutional violations is liable for the preventable harm caused by the other officer's actions. *Id.* Whether the officer had a "realistic opportunity" to intervene is a question for the jury, unless, "considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*

Here, Defendants argue the incident consisted of a rapid series of events allowing them no time to intervene in any alleged use of excessive force. Def. Rep. at 10. However, if the Court

credits Plaintiff's testimony, Defendants had multiple opportunities to intervene. Insofar as the incident included three different officers exerting unreasonable force, Plaintiff's alleged facts suggest that each officer had the opportunity to intervene. Whether one of the Defendants could have prevented a certain use of force is a question for a jury.

Plaintiff also claims Defendants' failure to intervene in the prosecution following the incident violated his constitutional rights. Pl's. Opp'n. at 24. Plaintiff argues that the government based his prosecution on false testimony and would have immediately released him if Defendants had not "stayed behind the blue wall of silence."[9] *Id.* Defendants argue Plaintiff's claim fails because there is no evidence beyond his own testimony suggesting the officers lied. ECF No. 95. However, as explained above, Plaintiff may rely on his testimony to present material facts in dispute. *Rentas*, 816 F.3d at 221. Therefore, Defendants' motion for summary judgment on Plaintiff's failure to intervene claim is **denied.**

---

9 *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 104 (2d Cir. 2000) (explaining the blue wall of silence).

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment in its entirety.

**SO ORDERED.**

**Dated:** March 28, 2019

        **New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**